**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**
**CASE NO.:**

| | |
|---|---|
| Charleston Advancement Academy High School, Nadine Deif, Kenneth Battle, Vivian Pettigrew, Dr. Traci Combs, Elizabeth Moffly, Latoya S. Gailliard, and Joel Collins, <br><br> Plaintiffs, <br><br> vs. <br><br> South Carolina Public Charter School District and John Payne. <br><br> Defendants. | C/A: <u>2:23-cv-964-BHH</u> <br><br><br> **COMPLAINT** <br> **(Jury Trial Demanded)** |

**TO:  DEFENDANTS, SOUTH CAROLINA PUBLIC CHARTER SCHOOL DISTRICT AND JOHN PAYNE.**

**PLEASE TAKE NOTICE THAT** Plaintiffs, Charleston Advancement Academy High School (Hereinafter referred to as "CAA" or the "School"), Nadine Deif (hereinafter referred to as "Deif"), Dr. Traci Combs (hereinafter referred to as "Combs"), Kenneth Battle (hereinafter referred to as "Battle"), Elizabeth Moffly (hereinafter referred to as "Moffly"), Vivian Pettigrew (hereinafter referred to as " Pettigrew"), Latoya S. Gailliard (hereinafter referred to as "Gailliard"), and Joel Collins (hereinafter referred to as "Collins") (all of the forgoing hereinafter collectively referred to as "Plaintiffs"), complaining of Defendants, South Carolina Public Charter School District (hereinafter referred to as the "SCPCSD") and John Payne (hereinafter referred to as " Payne"), would respectfully show unto this Court:

## **PARTIES**

**1.**    That CAA is a South Carolina nonprofit corporation and a public charter school organized and existing under the laws of the State of South Carolina, specifically the South

Carolina Charter Schools Act of 1996, Sections 59-40-10 through 59-40-240, CODE OF LAWS OF SOUTH CAROLINA, 1976, as amended (hereinafter referred to as the "Act"), and the South Carolina Nonprofit Corporation Act of 1994, Sections 33-31-101 through 33-31-1708, CODE OF LAWS OF SOUTH CAROLINA, 1976, as amended (hereinafter referred to as the "Nonprofit Act"), and is and has been continuously since its formation, in good standing.

2.     That CAA has two campuses, both located in Charleston County, South Carolina, one located in North Charleston, South Carolina, and the other located in Charleston, South Carolina.

3.     That CAA's students are predominately, if not exclusively, citizens and residents of Berkley County, Charleston County and Dorchester County.

4.     That CAA's faculty are predominately, if not exclusively, citizens and residents of Berkley County, Charleston County and Dorchester County.

5.     That Deif is and at all times relative hereto was a citizen and resident of Charleston County, South Carolina, and is and at all times relative hereto was the Chair of the CAA Board of Directors (hereinafter referred to as the "CAA Board").

6.     That Battle is and at all times relative hereto was a citizen and resident of Charleston County, South Carolina, and is and at all times relative hereto was a member of the CAA Board.

7.     That Pettigrew is and at all times relative hereto was a citizen and resident of Charleston County, South Carolina, and is and at all times relative hereto was a member of the CAA Board.

8.     That Combs is and at all times relative hereto was a citizen and resident of Charleston County, South Carolina, and is and at all times relative hereto was a member of the CAA Board.

9.     That Moffly is and at all times relative hereto was a citizen and resident of Charleston County, South Carolina, and is and at all times relative hereto was a member of the

CAA Board.

10.    That Gailliard is and at all times relative hereto was a citizen and resident of Charleston County, South Carolina, and is and at all times relative hereto was a parent of a child who is a student actively enrolled in CAA.

11.    That Collins is and at all times relative hereto was a citizen and resident of Berkeley County, South Carolina, and is and at all times relative hereto was a parent of a child who is a student actively enrolled in CAA.

12.    That the SCPCSD is and at all times relative hereto was a charter school sponsor as defined by the Act.

13.    That  the SCPCSD's primary office is located in Richland County, South Carolina.

14.    That, on information and belief, the SCPCSD sponsors thirty-eight (38) charter schools across the State of South Carolina, located in fourteen (14) South Carolina Counties, including Aiken County, Beaufort County, Charleston County, Darlington County, Edgefield County, Greenville County, Jasper County, Lee County, Lexington County, Orangeburg County, Pickens County, Spartanburg County, Sumter County, and York County, and the SCPCSD regularly conducts business in Charleston County, South Carolina, and has a substantial presence in Charleston County as seven (7) of the thirty-eight (38) schools sponsored by it are located in Charleston County.

15.    That, on information and belief, Payne is and at all times relative hereto was a citizen and resident of Darlington County, South Carolina, is and at all times relative hereto was a member of the SCPCSD Board of Trustees (hereinafter referred to as the "SCPCSD Board"), and is and at all times relative hereto was the Chair of the SCPCSD Board.

## JURISDICTION AND VENUE

16.    That this Court has jurisdiction over this matter pursuant to 28 U.S. Code § 1331 in that this matter is a civil action arising under the Constitution and laws of the United States in that

this matter arises out of the District's and Payne's (a) violation of Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d et seq., which prohibits the recipients of federal funds from discriminating on the basis of race, color, or national origin, (b) violation of the Equal Protection Clause of the Fourteen Amendment of the United States Constitution, which prohibits denial of equal protection of the laws, and (c) violation of the Due Process Clause of the Fourteenth Amendment of the United States Constitution, which prohibits depriving any person of life, liberty, or property without due process of the law.

17.     That Venue is proper within the United States District Court for the District of South Carolina pursuant to 28 U.S.C. § 1391(b)(1) and (2) in that all of the parties to this action reside as defined by 28 U.S.C. § 1391(b) in the State of South Carolina and because a substantial part of the operative events giving rise to the claims pleaded herein occurred in the District of South Carolina.

18.     That this Court has supplemental jurisdiction over the other claims raised herein pursuant to 28 U.S.C. § 1367 which permits this Court to resolve state law claims arising from the same operative events.

19.     That the declaratory and injunctive relief sought herein is authorized by 42 U.S.C. § 2000d et seq, including § 2000d-7 and other applicable law.

20.     That this matter is properly assigned to the Charleston Division as set forth in LOCAL CIV. RULE 3.01(A)(1) (D.S.C.) in that a substantial part of the events or omissions giving rise to the claims raised herein occurred in Berkely County, Charleston County and Dorchester County and in that where a corporate or other organization defendant, SCPCSD, does business relating to the events or omissions alleged, in that CAA's only campuses are located in Charleston County, all or substantially all, of the persons affected by the actions complained of herein are citizens and residents of the Charleston Division, specifically Berkeley County, Charleston County or Dorchester County, and SCPCSD does business in all three of the aforementioned counties.

## FACTS

### CAA Background and Sponsorship by the SCPCSD

21.    That CAA was formed and is governed by an independent and autonomous Board of Directors pursuant to the Act and the Nonprofit Act.

22.    That CAA is an Alternative Education Campus ("AEC") as defined by S.C. Code Ann. § 59-40-111, and CAA established its guiding educational philosophy that all students, regardless of past academic performance or personal obstacles, are capable of graduating from high school ready to succeed in the job market or post-secondary education.

23.    That CAA's mission is to provide a comprehensive high school education to at-risk students that leads to students' attainment of a diploma, acceptance to college, or pursuit of a career, and culminates in each student having a positive impact in his or her community.

24.    That CAA was founded to serve a unique group of students who either have dropped out of or are at risk of dropping out of high school.

25.    That CAA operates on the premises that students who are disengaged from school will become re-engaged once they are in a supportive environment where teachers believe in each student's ability to achieve, maintain high academic and behavioral standards, and work in partnership with the student to develop academic confidence.

26.    That unique features of CAA include a year-round schedule, two campuses in the Charleston area, continuous enrollment of students throughout the year, extended school hours to accommodate students' work and family responsibilities, use of three different instructional platforms, small teacher to student ratios, and student advocates who support students' social and academic growth.

27.    That CAA's student population is comprised predominantly of minority students, and a significant portion of CAA's students live in poverty.

28.    That CAA first opened in 2018 for the 2018/2019 school year.

29.     That CAA has been in operation for four school years and has graduated approximately two hundred (200) students who otherwise likely would not have persevered and graduated from high school.

30.     That CAA students who have earned a high school diploma are better prepared to go to college or pursue a career, and positively impact their community than they would have otherwise been had they not continued their high school education at CAA.

31.     That CAA provides high-poverty, at-risk, predominately minority students with a support system which helps them re-enter or stay in high school, earn a high school diploma, and proceed to success in either higher education, the military, or the workforce.

32.     That CAA has been successful in fulfilling its mission by helping approximately two hundred (200) at-risk students earn a high school diploma.

33.     That CAA currently enrolls over four hundred (400) students, many of which are on track to earn a high school diploma.

### SCPCSD Background and Duties

34.     That SCPCSD was established by S.C. Code Ann. § 59-40-220(A) as a public body and statewide sponsor of charter schools.

35.     That the Act delineates certain statutory responsibilities of charter school sponsors, including giving the sponsor the authority to conduct oversight activities which enable it to fulfill its own responsibilities under the Act, such as "exercis[ing] sanctions short of revocation in response to apparent deficiencies in charter school performance or legal compliance," which "may include requiring a school to develop and execute a corrective action plan," S.C. Code Ann. § 59-40-55(B)(8), and "determin[ing] whether each charter contract merits renewal, nonrenewal, or revocation," S.C. Code Ann. § 59-40-55(B)(9).

36.     That under Section 59-40-110, a sponsor is required to annually evaluate whether a charter school (1) committed a material violation of the condition, standards, performance

expectations, or procedures provided for in the charter application or charter school contract, (2) failed to meet the academic performance standards and expectations as defined in the charter application or charter school contract, (3) failed to maintain its books and records according to generally accepted accounting principles ("GAAP") or failed to create an appropriate system of internal control, or (4) violated any provision of law from which the charter school was not specifically exempted.

37.    That under Section 59-40-110 a charter school's annual evaluation results must be used in making a determination for nonrenewal or revocation.

38.    That pursuant to Section 59-40-110(C) sponsors are limited under the Act to revoking a school's charter for one of the following reasons:

> [The sponsor] determines that the charter school: (1) committed a material violation of the conditions, standards, performance expectations, or procedures provided for in the charter application or charter school contract, or both; (2) failed to meet the academic performance standards and expectations as defined in the charter application or charter school contract, or both; (3) failed to maintain its books and records according to generally accepted accounting principles or failed to create an appropriate system of internal control, or both; or (4) violated any provision of law from which the charter school was not specifically exempted.

39.    That sponsors may immediately revoke a school's charter only if the sponsor determines that the charter school "pose[s] an imminent threat of harm to the health or safety of students, or both, based on documented and clear and convincing data" as provided by S.C. Code Ann. § 59-40-110(D).

40.    That S.C. Code Ann. § 59-40-230 describes the composition of the SCPCSD's Board and how its members must be selected.

41.    That members of the SCPCSD Board are appointed by one of either the Governor, the Speaker of the State House of Representatives, or the President of the State Senate.

42.    That Payne was appointed to the SCPCSD Board by the former Speaker of the State

House of Representatives.

**43.** That Payne was selected to serve as Chairman of the SCPCSD Board by the other SCPCSD Board members in accordance with S.C. Code Ann. § 59-40-230(C).

**44.** That in July 2021, Payne was hired to serve as the city manager for the City of Darlington, South Carolina.

**45.** That the City of Darlington utilizes the council-manager form of local government as described in Sections 5-13-10 through 5-13-100, Code of Laws of South Carolina, 1976.

**46.** That under the council-manager form of government, the city manager serves as the "head of the administrative branch of the municipal government" as set forth in S.C. Code Ann. § 5-13-90.

**47.** That the city manager is empowered by state law to hire and dismiss municipal employees, prepare the municipality's budget and annual financial reports, and to "perform such other duties as may be prescribed by law."

### Sponsorship of CAA by the SCPCSD

**48.** That CAA submitted a charter application to the SCPCSD pursuant to the Act, which the SCPCSD approved on May 20, 2017.

**49.** That CAA opened its school at the beginning of the 2018-2019 school year.

**50.** That upon the approval of CAA's charter application, the charter application constituted an agreement between CAA and the SCPCSD pursuant to Section 59-40-60(A) of the Act.

**51.** That pursuant to Section 59-40-110(A) of the Act, the term of the charter is ten school years.

**52.** That pursuant to Section 59-40-120 of the Act and Section 12.7 of the charter contract, upon dissolution of a charter school, all of the charter school's assets not returned to donors through awards, grants, or gifts, become the property of the sponsor.

53.    That initially CAA contracted with an education management organization (hereinafter referred to as an "EMO") based out of Pasadena, California, Pathways In Education, Inc., to provide CAA management services related to the management of its school.

54.    That because it was dissatisfied with the management services provided Pathways In Education, Inc., CAA terminated its agreement with Pathways In Education, Inc., and on April 2, 2018, CAA entered into an agreement with a different EMO, Acceleration Academies, LLC (hereinafter referred to as "AA"), to provide a broad scope of educational management services, including, among them, security services (hereinafter referred to as the "Agreement").

55.    That CAA and the SCPCSD subsequently entered into a charter contract on April 11, 2018, that defines the rights and responsibilities of each party, pursuant to the Act, a copy of which charter contract is attached hereto as Exhibit A and incorporated herein by reference (hereinafter referred to as the "Charter Contract").

56.    That the Charter Contract defines the respective authorities and responsibilities of CAA and the SCPCSD.

57.    That among the various responsibilities of the SCPCSD described in the contract, the SCPCSD, in accordance with Section 59-40-55 of the Act, is required to:

a.    "notify . . . [a] School [it sponsors] of perceived problems when . . . [the school's] performance or legal/fiscal compliance is unsatisfactory and provide a reasonable opportunity for the school to remedy the problem, unless the problem warrants immediate revocation and revocation timelines apply;" and

b.    "take appropriate actions and exercise sanctions short of revocation in response to deficiencies in School performance or legal/fiscal compliance. These actions or sanctions may include requiring the School to develop and execute a corrective action plan within a specified timeframe."

58.    That AA is a Chicago, Illinois, based for profit company, founded by Joseph Wise

and David Sundstrom, which provides management services to educational institutions.

59.    That the SCPCSD amended the Charter Contract to approve AA as CAA's EMO.

60.    That the Charter Contract specifically provides, inter alia, that "CAA's Board of Directors will be able to terminate any management agreement if the Board of Directors determines that academic or operational performance is inadequate," and that "CAA's Board of Directors will have final oversight of the school, and may release CAA's principal or terminate the agreement with AA if the Board deems it necessary."

61.    That CAA is statutorily empowered to make its own employment decisions, contract for services, and acquire and manage its own property.

62.    That the services AA contractually agreed to provide included, among other things, developing and implementing a security plan to ensure the safety of all students and personnel.

63.    That under the terms of the Agreement AA's compensation was eighty-five percent (85%) CAA's annual funding.

64.    That the Agreement provides that "[i]n the event that a danger to student health, safety, or welfare exists, at the sole discretion of . . . [CAA], this Agreement may be terminated immediately."

65.    That Section 59-40-50(B)(1), CODE OD LAWS OF SOUTH CAROLINA, 1976, as amended, provides that CAA is statutorily obligated to "adhere to the same health, [and] safety . . . requirements as are applied to public schools operating in the same school district or, in the case of the South Carolina Public Charter School District . . . the local school district in which the charter school is located.".

**Summary of Relationship Between CAA and the SCPCSD Board**

66.    That in October 2019, the CAA Board learned that AA failed to address two dozen safety violations at CAA's campus located on Trident Technical College's campus.

67.    That soon thereafter CAA received a letter from the President of Trident Technical

College (hereinafter referred to as "TTC") dated October 30, 2019, outlining the twenty-four violations that occurred on the portion of TTC's campus leased by CAA and managed by AA, including numerous crimes resulting in arrests.

68.     That though TTC reaffirmed its support of CAA in the October 30, 2019, letter it nonetheless threatened to evict CAA if the security issues were not resolved, a copy of which letter is attached hereto and incorporated herein by reference as Exhibit B.

69.     That on October 31, 2019, the CAA Board met and voted to immediately terminate its contract with AA for just cause based on student welfare and safety concerns, including AA's failure to address two dozen safety violations, some of which resulted in arrests, at CAA's campus located at TTC.

70.     That AA disputed CAA's immediate termination of the contract and filed a Demand for Arbitration on November 4, 2019, seeking monetary relief in the amount of $992,850.53 as well as injunctive relief compelling CAA to maintain the pre-termination arrangement regarding AA's services to CAA.

71.     That as a result of CAA's decision to terminate AA, CAA sought to amend its charter with the SCPCSD to replace the services the charter previously described would be provided by AA.

72.     That on November 14, 2019, the CAA leadership team presented the proposed Charter Amendment Request to the SCPCSD Board and outlined the steps that the CAA Board had taken to date to replace the services previously provided by AA.

73.     That at that time, Payne was serving as Chair of the SCPCSD Board.

74.     That the SCPCSD Board voted to deny CAA's amendment request and ordered CAA to "maintain the status quo," thereby requiring CAA to continue allowing AA to manage the School and make claims for payment from CAA, despite the CAA Board having terminated its contract with AA.

75.    That thereafter, the SCPCSD took a series of progressively egregious actions against CAA including, but not limited to, punishing CAA for its decisions to terminate its contract with AA for student safety and welfare concerns and to terminate an employee for insubordination and student safety and welfare concerns.

76.    That the employee who was terminated by CAA immediately went to work for AA following her termination by CAA.

77.    That discovery conducted as part of subsequent arbitration proceedings revealed that former SCPCSD Superintendent, Elliot Smalley, Payne, and counsel for the SCPCSD Board, Eric T. Norton, Esq., communicated with AA representatives, David Sundstrom and Joseph Wise, prior to the SCPCSD Board's meeting on November 14, 2019, which CAA and its legal counsel were not privy to or made aware of, and the SCPCSD continued to communicate directly with AA and its representatives regarding CAA without CAA's knowledge after the SCPCSD Board's vote on November 14, 2019 to "maintain the status quo" a copy of which communications are attached hereto and incorporated herein by reference as Exhibit C.

78.    That upon information and belief, David Sundstrom and Joseph Wise have also founded several other private, for-profit education companies, including Education Research and Development Institute, a/k/a ERDI Partners, Inc. ("ERDI") and Atlantic Research Partners, that have been the subject of criminal and ethical investigations across the country, including in Beaufort County, South Carolina, related to fraud and diversion of public funds through various self-serving kick-back schemes, *see* Exhibit D attached hereto and incorporated herein by reference.

79.    That the dealings of ERDI, ARP, Wise, and Sundstrom have been subject to legal scrutiny in Illinois, Louisiana, Tennessee, Kentucky, Ohio, Maryland, and Pennsylvania, as reported in several places, *see* Exhibit D attached hereto and incorporated herein by reference.

80.    That around the same time CAA attempted to terminate its relationship with AA,

the SCPCSD withheld federal and state funding from CAA in violation of Section 59-40-55(C) of the Act, which provides that "[t]he South Carolina Public Charter School District may retain no more than two percent of the total state appropriations for each charter school it authorizes to cover the cost of overseeing its charter schools."

81.    That the SCPCSD only released the federal and state funding owed to CAA after the South Carolina Department of Education threatened to fine the SCPCSD for withholding CAA's funding pursuant to Section 59-40-140(D) of the Act and CAA filed a Complaint against the SCPCSD for breach of contract, among other causes of action.

82.    That the SCPCSD, thereafter, continued to take adverse actions against CAA and in favor of AA.

83.    That on February 20, 2020, counsel for the SCPCSD, Eric T. Norton, Esq., made arrangements to and did testify in support of AA, an out-of-state for-profit organization, and against CAA, a South Carolina public school that the SCPCSD sponsors, in a North Carolina arbitration proceeding between CAA and AA related to CAA's termination of the educational management agreement with AA.

84.    That at its meeting held virtually on April 17, 2020, the SCPCSD Board voted to approve a charter application from Acceleration Education Academy, now known as Lowcountry Acceleration Academy ("LAA"), which contracts with AA to provide a broad scope of management services in exchange for compensation.

85.    That a representative for LAA confirmed during the charter application hearing that LAA would be located less than two miles from CAA's TTC campus.

86.    That LAA directly competes with CAA for student enrollment.

87.    That the SCPCSD Board voted to approve LAA's charter application and permit LAA to open just months later, in the fall of 2020, though this timeline was later postponed by the South Carolina Department of Education due to concerns related to the SCPCSD's unprecedented,

fast-tracked approval of the AA-associated school.

88.    That a few months after LAA's charter application was approved by the SCPCSD, AA announced in a company newsletter that LAA's founding Board Chair, Ms. Amy Mims, had been hired by AA to serve as AA's "Executive Director of Product Development and Partner Success" a copy of which newsletter is attached hereto and incorporated herein by reference as Exhibit E.

89.    That the SCPCSD Board has since approved another charter school that contracts with AA, Horry County Acceleration Academy, which on information and belief is scheduled to open for the 2023-2024 school year and will pay significant compensation to AA.

90.    That since CAA terminated its relationship with AA, the relationship between CAA and the SCPCSD Board has remained strained and several issues related to CAA's termination of AA have been litigated between the SCPCSD and CAA.

**CAA's Fiscal Year 2020-21 Annual Review by the SCPCSD**

91.    That under the Act, CAA is required to complete and submit an annual report to the SCPCSD that evaluates the School's academic performance, financial compliance, and governance.

92.    That the SCPCSD, as CAA's sponsor, conducts an annual review of CAA based on this annual report, data on the school's performance and information in the SCPCSD's files.

93.    That by letter dated June 14, 2022, the SCPCSD's Superintendent, Chris Neeley, presented the results of the SCPCSD's annual review of CAA for Fiscal Year 2020-21, which also included data on CAA's performance from the 2021-22 school year.

94.    That Superintendent Neeley's letter is the most recent annual evaluation of CAA performed by the SCPCSD, a copy of which letter is attached hereto and incorporated herein by reference as Exhibit F.

95.    That Superintendent Neeley's evaluation found that CAA was in compliance with

teacher certification requirements, demographic requirements, sustainable fund balance and cash on hand standards, and special education requirements.

96.    That Superintendent Neeley's letter expressed general concerns with CAA's graduation rate and the amount of funds dedicated to student services, which appeared to be misplaced concerns based on inapplicable and inaccurate data utilized by the SCPCSD.

97.    That former CAA Director, Wayne Stevens, responded to Superintendent Neeley's letter on August 22, 2022, a copy of which letter is attached hereto and incorporated herein by reference as Exhibit G.

98.    That Mr. Stevens noted that since CAA stopped being managed by AA, CAA's graduation rate had not only increased, but almost tripled.

99.    That Mr. Stevens further explained that CAA had "increased spending on student services and significantly decreased administrative costs and overhead," and that since moving away from AA, CAA had taken the enormous sums previously being paid to AA and "reinvested them in instructional and student services."

100.    That Mr. Stevens further noted that the move away from AA was also permitting CAA "to save for long-term initiatives, such as the development of a permanent school facility to serve our students."

101.    That the SCPCSD did not respond to Mr. Stevens or convey any objection to CAA's August 22, 2022, letter.

102.    That significantly, the SCPCSD did not require CAA to develop and execute a corrective action plan related to any of the items discussed in the annual review.

103.    That the SCPCSD in no way indicated that CAA was at risk of having its charter revoked due to any of the items in the annual review.

### CAA's Request to Transfer Its Charter to a Different Sponsor

104.    That by letter dated September 30, 2022, the CAA Board notified the SCPCSD

Board that it was requesting a transfer of its charter from the SCPCSD to Limestone University and the Limestone Charter Association ("Limestone"), a new statewide sponsor of charter schools established in July 2021, a copy of which letter is attached hereto and incorporated herein by reference as Exhibit H.

105.    That the letter requested that the SCPCSD Board hear CAA's request at its regular October 2022 meeting and that it provide CAA at least ten (10) days' written notice of the hearing date so that CAA representatives could travel to Columbia for the meeting.

106.    That based on subsequent communications from the SCPCSD, CAA was under the impression that the SCPCSD Board would hear and consider CAA's transfer request at its regular meeting on November 10, 2022.

107.    That by letter dated November 4, 2022, Chris Neeley, Superintendent of the SCPCSD, notified CAA that the SCPCSD Board would not hear CAA's request to transfer its charter at its November 10, 2022 meeting as previously anticipated.

108.    That CAA received a letter from Superintendent Neeley dated January 4, 2023, notifying CAA that the SCPCSD Board would hear and consider CAA's request to transfer its charter at the SCPCSD Board's meeting on January 19, 2023, a copy of which letter is attached hereto and incorporated herein by reference as Exhibit I.

109.    That the letter also presented seven concerns the SCPCSD allegedly had received about CAA, which the CAA Board responded to and addressed by letter dated January 10, 2023.

110.    That none of the concerns allegedly received by the SCPCSD related to CAA's academic performance or charter goals, and all concerns were answered by CAA without further question from the SCPCSD.

111.    That the SCPCSD posted on its website an agenda for the SCPCSD Board's regular meeting scheduled for January 19, 2023, a copy of which posted agenda is attached hereto and incorporated herein by reference as Exhibit J.

112.    That Section IX of the agenda posted on the SCPCSD website for the January 19, 2023 meeting lists "Action Item[s]."

113.    That under the heading "Action Item[s]," Action Item D is listed simply as "Action on Charleston Advancement Academy's Charter," which would be CAA's transfer request.

114.    That the SCPCSD used the exact same language on its agenda to consider another school's request to transfer away from the SCPCDS to another sponsor, as shown in Action Item C on the agenda.

115.    That at its regular meeting on January 19, 2023, the SCPCSD Board went into an executive session with the SCPCSD's counsel for almost two hours to discuss CAA prior to returning to open session to take up the action items listed on the agenda.

116.    That after returning to open session, the SCPCSD Board heard and considered CAA's request to transfer its charter from the SCPCSD to Limestone.

117.    That after presentations by both SCPCSD staff and CAA representatives, the SCPCSD Board voted to deny CAA's request to transfer by a vote of six to zero with one abstention.

**SCPCSD Board Vote To Revoke CAA's Charter**

118.    That after the motion to deny CAA's transfer request passed, Payne surprisingly and unexpectedly asked his fellow SCPCSD Board members if any other actions needed to be taken with regard to CAA.

119.    That Jonathan Butcher, another SCPCSD Board member, abruptly moved to revoke CAA's charter.

120.    That Payne quickly seconded the motion, and then opened the motion to the SCPCSD Board for discussion.

121.    That the entirety of the discussion among the SCPCSD Board members occurred between Cyndi Mosteller, who stated that she felt the motion to revoke was "hurried," and to which

Payne replied that the issue had been "coming" for years.

122.    That CAA representatives, who were at the meeting to present information related to CAA's transfer request and were not previously aware of any consideration to revoke CAA's charter, asked if they could comment on the SCPCSD Board's motion.

123.    That Payne refused to allow CAA representatives an opportunity to comment on the motion to revoke CAA's charter, stating that it was time for "Board discussion."

124.    That after a total of three (3) minutes of Board discussion, with no recommendation from the SCPCSD Superintendent to revoke CAA's charter, no notice that revocation would be considered, and no opportunity for CAA to be heard, the SCPCSD Board voted six to one to revoke CAA's charter, effective June 30, 2023.

125.    That after the SCPCSD Board voted to revoke CAA's charter, Payne again denied CAA representatives the opportunity to comment on the decision to revoke CAA's charter.

126.    That the entire discussion and vote to revoke CAA's charter took approximately four minutes and fifty-seven seconds.

127.    That the SCPCSD Board meeting on January 19, 2023, including the surprise motion to revoke CAA's charter, the SCPCSD Board's brief discussion, Payne's comments and refusal to allow CAA representatives to speak, and the SCPCSD Board's vote to revoke CAA's charter, has been captured on video with audio.

128.    That revocation of CAA's charter was not listed on the agenda for the SCPCSD Board's January 19, 2023, meeting, a copy of which agenda is attached hereto as Exhibit J and incorporated herein by reference.

129.    That the SCPCSD Board took no vote to amend its agenda to add revocation of CAA's charter as an action item as required by Section 30-4-80(A) of the South Carolina Freedom of Information Act (hereinafter referred to as the "FOIA").

130.    That none of the SCPCSD's communications to CAA regarding the January 19,

2023, SCPCSD Board meeting stated that the SCPCSD Board would consider revoking CAA's charter, including the letter from Superintendent Neeley, a copy of which is attached hereto as Exhibit I and incorporated herein by reference.

131.    That the SCPCSD's most recent annual evaluation of CAA did not in any way convey that the SCPCSD was evaluating revocation of CAA's charter.

132.    That the SCPCSD's most recent annual evaluation of CAA did not require CAA to develop and execute a corrective action plan.

133.    That the SCPCSD Superintendent did not make a recommendation to the SCPCSD Board to revoke CAA's charter.

134.    That the SCPCSD staff did not conduct a revocation review process with CAA at any time prior to the SCPCSD Board's vote to revoke CAA's charter on January 19, 2023.

135.    That on information and belief, the SCPCSD regularly conducts a revocation review process with schools it sponsors that are being evaluated for potential revocation.

136.    That the SCPCSD Board moved to revoke CAA's charter *sua sponte*, unexpectedly and by surprise.

137.    That by letter dated January 23, 2023, the SCPCSD Board notified CAA of its decision to a) deny CAA's request to transfer its charter to Limestone, and b) to revoke CAA's charter and terminate its charter contract, a copy of which communications are attached hereto as Exhibit K and incorporated herein by reference.

138.    That the SCPCSD Board's letter stated that the grounds for revocation were that "CAA committed a material violation of the conditions, standards, performance expectations or procedures provided for in the charter school application or charter school contract, or both" and that "CAA failed to meet the academic performance standards and expectations as defined in the charter school application or charter school contract or both."

139.    That in its letter, the SCPCSD Board cited CAA's graduation rate and academic

performance as reasons for the revocation of CAA's charter.

140.    That the SCPCSD evaluated CAA's graduation rate based on inapplicable and inaccurate data and evaluated CAA's academic performance without making comparisons to state or nationally normed data for similar subsets of students (i.e. students who have dropped out of high school or are at-risk of dropping out of high school) as required by the Act, as set forth in S.C. Code Ann. § 59-40-111(F).

141.    That the SCPCSD Board's letter also states the following as a "relevant fact" supporting revocation: "CAA has increased its fund balance from $126,014 in 2019 to $3,452,637 as of June 30, 2022."

142.    That the SCPCSD's Board letter also states the following as a "relevant fact" supporting revocation: "The fund balance showed a net change of $1,534,366 during the past fiscal year."

143.    That CAA, which currently leases space for both of its Charleston-area campuses, has been saving funds to purchase permanent facility space to provide a permanent and stable home for CAA's school and at-risk students in a very challenging Charleston, South Carolina real estate market, and CAA informed the District of such savings in Stevens' letter dated August 22, 2022, a copy of which is attached hereto as Exhibit G and incorporated herein by reference.

144.    That CAA received clean audits for both Fiscal Year 2021 and Fiscal Year 2022.

145.    That upon information and belief, the SCPCSD utilizes drastically different performance evaluation and revocation procedures and standards for schools the SCPCSD sponsors that are not AECs and that serve predominantly white student populations.

146.    That the SCPCSD Board, under Payne's leadership has a history of treating schools that serve minority students differently from schools that serve predominantly white students.

147.    That in 2019, the SCPCSD Board, which also was chaired by Payne at that time, revoked the charter of Quest Leadership Academy, a school located in the Belle Meade community

of Greenville, South Carolina, with a student population that was 95.8% African-American and with 92.4% of its students living in poverty.

148.    That conversely, the SCPCSD did not revoke the charter of NEXT School, another charter school located in Greenville, South Carolina, with performance results similar to Quest, but with a student population comprised of 89.6% white students.

149.    That upon information and belief, the SCPCSD had undergone multiple revocation review processes with the NEXT School that were not undertaken with Quest Leadership Academy.

150.    That on information and belief, the SCPCSD never revoked the NEXT School's charter but rather the NEXT School voluntarily relinquished its charter at the end of the 2021-2022 school year.

151.    That upon information and belief, several schools sponsored by SCPCSD which are not classified as AECs, do not serve a predominantly at-risk student population, and are not comprised predominantly of minority students, have not met their stated charter goals and yet the SCPCSD Board has not abruptly voted to revoke those schools' charters.

152.    That upon information and belief, no other school sponsored by the SCPCSD has been threatened with revocation for maintaining a healthy fund balance or saving for long-term initiatives that benefit students.

153.    That upon information and belief, to the contrary, the SCPCSD has praised other schools, especially those that serve predominantly white student populations, for maintaining healthy fund balances.

154.    That pursuant to Section 59-40-110(H), CAA timely requested a revocation hearing before the sponsor by letter dated January 30, 2023.

155.    That at the time CAA requested the revocation hearing it also requested a rehearing of its transfer request.

156.    That at its meeting held on February 9, 2023, the SCPCSD Board scheduled CAA's revocation hearing for May 11, 2023.

157.    That the SCPCSD Board took no action regarding CAA's request that the SCPCSD Board rehear and reconsider CAA's transfer request.

158.    That upon information and belief, the same members of the SCPCSD Board who *sua sponte* voted to revoke CAA's charter on January 19, 2023, will adjudicate CAA's revocation hearing and decide whether or not to revoke CAA's charter, effective June 30, 2023.

159.    That both the SCPCSD and AA are situated to benefit financially and receive millions of dollars upon the revocation of CAA's charter.

160.    That SCPCSD will receive CAA's assets, pursuant to the Act, and AA will likely receive an additional several million dollars from LAA over the forthcoming years.

161.    That AA's agreements with public schools usually provide that AA is entitled to 85% of the school's revenues.

162.    That LAA, which the SCPCSD authorized to open less than two miles from CAA's campus, will likely enroll many students that would have otherwise been enrolled at CAA, will likely receive millions of dollars in revenue for those students, and will likely pay a significant portion of that revenue to AA, an out-of-state for-profit entity managed by Wise and Sundstrom, which employed LAA's founding Board chair.

163.    That the SCPCSD likely hopes that CAA will be unable to prosecute the pre-existing litigation between CAA and the SCPCSD following the revocation of CAA's charter.

164.    That the SCPCSD's surprise, unexpected and abrupt action to revoke CAA's charter stands to benefit the SCPCSD and AA financially to the detriment of CAA's students, families, employees, graduates, and community.

165.    That the revocation of CAA's charter would educationally displace hundreds of at-risk students, mostly of minority races and ethnicities, many of which live in low-income

households below the poverty line and many of whom are currently on track to graduate from CAA and receive a high school diploma.

## FIRST CAUSE OF ACTION
### (Violation of Title VI by the Defendants)

166.    That Plaintiffs reallege each and every relevant and consistent allegation set forth in paragraph 1 through 165 above as if fully stated verbatim herein.

167.    That Section 601 of Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d *et. seq*. provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."

168.    That SCPCSD and Payne have received and continue to receive federal financial assistance for their charter school sponsorship programs and activities.

169.    That SCPCSD and Payne have discriminated against CAA and engaged in a pattern or practice of conduct that is unjustified and has a discriminatory impact because of a protected status covered by Title VI.

170.    That by recommending the revocation of CAA's charter without a revocation review process, without requiring a corrective action plan in connection with the annual evaluation, without relying on applicable and accurate data, without a recommendation from the SCPCSD Superintendent, without legal notice to CAA and its community, without giving CAA or its students' families an opportunity to provide input, without making comparisons to state or nationally normed data for similar subsets of students (i.e. students have who dropped out of school or are at-risk of dropping out of school) as required by Section 59-40-111(F), without discussing the matter for five full minutes, and without applying the same procedures or performance evaluation standards to schools sponsored by the SCPCSD and serving primarily white students, the SCPCSD and its Board have knowingly, willfully and intentionally discriminated against CAA, an AEC, and the high-poverty, predominately minority students that attend and graduate

from the School, and also had a disparate impact on at-risk, minority students.

171.    That CAA, an AEC, is fulfilling its mission of helping at-risk students who have dropped out of other schools or are at risk of dropping out of other schools attain a high school diploma, with the majority of CAA's graduates being minority students.

172.    That the SCPCSD's and Payne's stated reasons for revocation are pretextual and discriminatory for the reasons stated herein.

173.    That upon information and belief, under Payne's leadership, the SCPCSD Board has not moved to revoke any charter school with a predominately white student population without a revocation review process, without requiring a corrective action plan in connection with the annual evaluation, without relying on applicable and accurate data, without a recommendation from the SCPCSD Superintendent, without legal notice to the school and its community, without giving the school and its students' families an opportunity to provide input, without adhering to the Act's requirements, and without discussing the matter for five full minutes.

174.    That the discriminatory pattern or practice of conduct and intentional discrimination by SCPCSD and Payne and its agents and the disparate impact of the SCPCSD and Payne's practices on at-risk, minority students violate Title VI and its implementing regulations.

175.    That as a direct and proximate result of SCPCSD's and Payne's discriminatory actions, Plaintiffs have and will suffer irreparable harm, and Plaintiffs are entitled to injunctive relief, along with damages in an amount to be determined by a jury at trial, costs and attorney's fees, and other appropriate legal and equitable relief.

## SECOND CAUSE OF ACTION
### (Violation of Civil Rights Under 42 U.S.C. § 1983 Against Defendants)

176.    That Plaintiffs reallege each and every relevant and consistent allegation set forth in paragraph 1 through 175 above as if fully stated herein verbatim.

177.    That the Fourteenth Amendment of the United States Constitution states that no State shall "deny to any person within its jurisdiction the equal protection of the laws."

178.    That at all times relevant herein, CAA was designated as an AEC and served an at-risk student population comprised predominantly of minority students and students from impoverished households.

179.    That at all times relevant herein, Plaintiffs had a right to equal protection of the laws as provided by the Fourteenth Amendment and protected under 42 U.S.C. § 1983.

180.    That at all times relevant herein, Plaintiffs had a right to equal educational opportunities funded, in part, through federal funding, and Plaintiffs had a right to the protections granted by Title VI of the Civil Rights Act of 1964.

181.    That SCPCSD has exercised a custom of notifying schools that it sponsors of concerns related to the school's academic achievements and financial compliance; of allowing the school a reasonable opportunity to correct such concerns; of exercising sanctions short of revocation, including requiring the school to complete a corrective action plan to remediate such concerns; of conducting a revocation review process with the school; and of presenting a recommendation to revoke the school's charter from the SCPCSD Superintendent before the SCPCSD Board votes to revoke a school's charter.

182.    That prior to the SCPCSD Board voting to revoke CAA's charter, neither the SCPCSD nor Payne (a) notified CAA of concerns related to CAA's academic achievements and financial compliance; (b) allowed CAA a reasonable opportunity to correct such concerns; (c) exercised sanctions short of revocation, including requiring the school to complete a corrective action plan to remediate such concerns; (d) conducted a revocation review process with the school; (e) complied with the Act's requirement to make comparisons to state or nationally normed data for similar subsets of students (i.e. students have who dropped out of school or are at-risk of dropping out of school) as required by Section 59-40-111(F); or (f) received a recommendation to revoke the school's charter from the SCPCSD Superintendent.

183.    That the actions of SCPCSD and Payne in voting to revoke CAA's charter

significantly deviated from the usual customs and practices it implements to revoke a school's charter, especially those schools which are not designated an AEC and not primarily serving an at-risk student population comprised primarily of minority students from impoverished households.

184.    That SCPCSD and Payne deliberately and intentionally disregarded the rights of Plaintiffs in deviating from its established customs and practices or did so in a manner that had a disparate impact on CAA's at-risk, minority student population.

185.    That the actions of SCPCSD and Payne deprived Plaintiffs of rights granted to them under the Fourteenth Amendment and Title VI, specifically the equal protection of the laws.

186.    That as a direct and proximate result of SCPCSD's and Payne's discriminatory actions, Plaintiffs have and will suffer irreparable harm and are entitled to injunctive relief to prohibit SCPCSD and Payne from further depriving Plaintiffs of their rights, along with compensatory damages in a sum to be determined by a jury at trial, costs, attorney's fees, and other appropriate legal and equitable relief.

### THIRD CAUSE OF ACTION
**(Breach of Contract Against Defendants)**

187.    That Plaintiffs reallege each and every relevant and consistent allegation set forth in paragraph 1 through 186 above as if fully stated herein verbatim.

188.    That CAA's approved charter application, pursuant to § 59-40-60(A) of the Act, constitutes an agreement with the SCPCSD, and CAA and the SCPCSD entered into a separate charter school contract, as defined by § 59-40-40(9) of the Act, on April 11, 2018.

189.    That the term of the charter is 10 years pursuant to § 59-40-110(A).

190.    That CAA has complied with and performed its obligations under CAA's charter application and charter school contract in good faith.

191.    That the SCPCSD has breached CAA's charter application and charter contract by not notifying CAA of perceived problems related to its academic performance and fiscal compliance and providing a reasonable opportunity for CAA to remedy such perceived problems

prior to initiating revocation procedures, in contravention of Section 3.1.A.v, vi, and vii of the charter contract.

**192.**    That the SCPCSD is in material breach of contract in the following particulars:

**a.**    Failing to notify CAA of perceived problems;

**b.**    Failing to permit CAA a reasonable opportunity to remedy perceived problems;

**c.**    Failing to implement a corrective action plan or requiring CAA to develop a corrective action plan to address perceived issues;

**d.**    Failing to conduct a revocation review process to determine whether the School's charter merits revocation;

**193.**    That as a result of the SCPCSD's breach of contract, Plaintiffs have and will suffer irreparable harm, and Plaintiffs are entitled to injunctive relief, along with damages in an amount to be determined by a jury at trial, costs, and attorneys' fees pursuant to S.C. Code Ann. § 15-77-300, and other appropriate legal and equitable relief.

<u>**FOURTH CAUSE OF ACTION**</u>
**(Violation of the South Carolina Freedom of Information Act by Defendants)**

**194.**    That Plaintiffs reallege each and every relevant and consistent allegation set forth in paragraphs 1 through 193 above as if fully stated herein verbatim.

**195.**    That FOIA states that "it is vital in a democratic society that public business be performed in an open and public manner so that citizens shall be advised of the performance of public officials and of the decisions that are reached in public activity and in the formulation of public policy." S.C. Code Ann. § 30-4-15.

**196.**    That Section 30-4-80(A) of the South Carolina Code states:

. . . An agenda for regularly scheduled or special meetings must be posted on a bulletin board in a publicly accessible place at the office or meeting place of the public body and on a public website maintained by the body, if any, at least twenty-four hours prior to such meetings. . . . Once an agenda for a regular, called, special, or rescheduled meeting is posted pursuant to this subsection, no items may be added to the agenda without an additional twenty-four hours notice to the public, which

must be made in the same manner as the original posting. After the meeting begins, an item upon which final action can be taken at the meeting or if the item is one in which there has not been and will not be an opportunity for public comment with prior public notice given in accordance with this section, it only may be added to the agenda by a two-thirds vote of the members present and voting and upon a finding by the body that an emergency or an exigent circumstance exists if the item is not added to the agenda. . . .

197.    That the SCPCSD is a public body pursuant to the Act and Section 30-4-20(a) of the FOIA.

198.    That the SCPCSD Board voted to revoke CAA's charter at its meeting on January 19, 2023, without listing "revocation" of CAA's charter on its posted agenda and without amending its agenda to add "revocation" of CAA's charter as an action item by a two-thirds vote of the members present and voting and upon a finding by the body that an emergency or an exigent circumstance exists if the item is not added to the agenda.

199.    That prior to the meeting on January 19, 2023, the SCPCSD only informed CAA that CAA's request to transfer to another sponsor would be considered at the meeting on January 19, 2023.

200.    That Plaintiffs are entitled to declaratory relief from this Honorable Court that declares that the SCPCSD Board violated the FOIA in the following particulars:

a.    Failing to list "revocation" of CAA's charter as an action item on the agenda for its January 19, 2023, meeting.

b.    Failing to notify CAA in advance that the SCPCSD Board would consider and take action to initiate revocation proceedings on CAA's charter at its January 19, 2023, meeting.

c.    Failing to amend the agenda for its January 19, 2023, meeting to add revocation of CAA's charter by a two-thirds vote of the SCPCSD Board members present at its meeting on January 19, 2023, and a finding of an emergency or exigent circumstances existed warranting the amendment.

201.    That Plaintiffs have the right to have this question determined by this Honorable Court, and a declaratory judgment and injunctive relief granted pursuant to S.C. Code Ann. § 30-4-100, § 15-53-30, and other legal authority.

202.    That Plaintiffs are also entitled to an award of attorney's fees, costs of this action, and other equitable relief this Court deems just and proper under S.C. Code Ann. § 30-4-100 and other applicable law.

203.    That pursuant to § 30-4-100(A), Plaintiffs hereby request an initial hearing be scheduled by the Court as soon as possible.

## FIFTH CAUSE OF ACTION
**(Violation of S.C. Const. Art. XVII, § 1A (Dual Office Holding) Against Defendant Payne)**

204.    That Plaintiffs reallege each and every relevant and consistent allegation set forth in paragraphs 1 through paragraph 203 above as if fully stated herein verbatim.

205.    That Article XVII, Section 1A of The Constitution of the State of South Carolina provides, in pertinent part, "No person may hold two offices of honor or profit at the same time . . . ."

206.    That the SCPCSD constitutes a public body and membership on the SCPCSD Board constitutes a public office for purposes of the prohibition against dual office holding contained in Article XVII, Section 1A of the Constitution of the State of South Carolina.

207.    That the city manager in a council-manager form of government is empowered by state law to perform certain duties that qualify it as a position of honor or profit for purposes of the constitutional prohibition against dual office holding.

208.    That Plaintiffs are entitled to declaratory relief from this Honorable Court that declares that Payne is in violation of the constitutional prohibition against dual office holding by serving as both a member of the SCPCSD Board and city manager for the City of Darlington.

209.    That Plaintiffs have the right to have this question determined by this Honorable Court pursuant to S.C. Code Ann. § 15-53-30, and other legal authority.

**SIXTH CAUSE OF ACTION**
**(Violation of U.S. Const. amend. XIV (Due Process) and S.C. Const. Art. I, § 22 (Due Process) Against Defendants)**

210.    That Plaintiffs reallege each and every relevant and consistent allegation set forth in paragraph 1 through paragraph 209 above as if fully stated herein verbatim.

211.    That the Fourteenth Amendment of the Constitution of the United States of America provides "nor shall any State deprive any person of life, liberty, or property without due process of law."

212.    That Article I, Section 22 of The Constitution of the State of South Carolina provides:

> No person shall be finally bound by a judicial or quasi-judicial decision of an administrative agency affecting private rights except on due notice and an opportunity to be heard; nor shall he be subject to the same person for both prosecution and adjudication; nor shall he be deprived of liberty or property unless by a mode of procedure prescribed by the General Assembly . . . .

(emphasis added.)

213.    That as a nonprofit corporation and citizens of South Carolina, Plaintiffs are guaranteed the right to notice and an opportunity to be heard before a fair and impartial administrative body.

214.    That Plaintiffs have fundamental property and liberty interests in operating as and attending a public charter school, including but not limited to the right to contract and to receive and spend funds in furtherance of the school and the right to enroll students at the school.

215.    That SCPCSD is authorized by the Act to renew, non-renew, or revoke existing charters of schools that it sponsors.

216.    That in *sua sponte* voting to revoke CAA's charter, the SCPCSD Board, including Payne, received *ex parte* information regarding CAA in executive session on January 19, 2023, and made comments showing bias against CAA that reflect an impartial "will to win" with regard

to revoking CAA's charter.

217.    That CAA is being subject to the same entity – the SCPCSD Board – for both prosecution and adjudication of its charter revocation, which will put CAA in the position of needing to cross-examine its adjudicators, and will deny CAA from receiving a fair and impartial adjudication.

218.    That the SCPCSD has not explained to CAA what opportunity, if any, CAA will have to cross-examine the SCPCSD Board members at the revocation hearing the SCPCSD Board members are adjudicating.

219.    That Plaintiffs are entitled to both injunctive and declaratory relief from this Honorable Court declaring that the SCPCSD Board cannot serve as both the prosecuting and adjudicating body for CAA's charter revocation without violating the due process guaranteed to CAA by the Constitution of the United States and the Constitution of the State of South Carolina.

220.    That Plaintiffs have the right to have this question determined by this Honorable Court pursuant to S.C. Code Ann. § 15-53-30, and other legal authority.

221.    That Plaintiffs pray for such injunctive, legal, and equitable relief this Court deems just and proper to preserve CAA's due process rights.

**WHEREFORE,** Plaintiffs pray that this Court:

A)    Enjoin Defendants from taking any action or engaging in any proceeding to revoke or support the revocation of CAA's charter or close the School until the Court can fully adjudicate merits of this action so that the School may continue its regular operations, prevent irreparable harm to the School and students, and promote the public interest;

B)    Enjoin Defendants from taking any action or engaging in any proceeding that would interfere with CAA's regular operations, in the absence of an imminent threat of harm to the health or safety or CAA's students, or both, based on documented and clear

and convincing evidence, as described in S.C. Code Ann. § 59-40-110(D), until the Court can fully adjudicate the merits of this action.

**C)**   Enjoin Defendants from engaging in any of the discriminatory acts forming the Title VI and 42 U.S.C. § 1983 violations described herein and order Defendants to take such remedial action as will eliminate such discrimination;

**D)**   Enjoin Defendants and issue a declaratory judgment that the SCPCSD violated the South Carolina Freedom of Information Act when it voted to revoke CAA's charter without noticing "revocation" on the agenda and award attorney's fees associated with pursuing this action;

**E)**   Issue a declaratory judgment that by concurrently serving as both Chairman of the SCPCSD Board and city manager for the City of Darlington, Payne is in violation of the prohibition against dual office holding described in Article XVII, Section 1A of the Constitution of the State of South Carolina;

**F)**   Enjoin Defendants and issue a declaratory judgment that the SCPCSD Board cannot serve as both the prosecuting and adjudicating body for CAA's charter revocation hearing without violating the due process rights guaranteed to CAA by the Constitution of the United States and the Constitution of the State of South Carolina;

**G)**   Order such other declaratory and equitable relief as the Court deems proper in the circumstances.

**H)**   For a judgment against the Defendants in an appropriate amount of actual and compensatory damages to be determined by a jury, as well as the costs of this action, attorney's fees, and other damages deemed appropriate by a jury.

RESPECTFULLY SUBMITTED,

**TURNER & CAUDELL, LLC**

/s/ Tyler R. Turner
Tyler R. Turner, Esq.
Federal I.D. No. 10847
e-mail: tturner@turnercaudell.com
Mary Allison Caudell, Esq.
Federal I.D. No. 11837
e-mail: macaudell@turnercaudell.com
Erin W. Anderson, Esq.
Federal I.D. No. 13376
e-mail: eanderson@turnercaudell.com
914 Richland Street, Suite A-101
Columbia, South Carolina 29201
(803) 828-9708

- AND –

**PRITCHARD LAW GROUP, LLC**

/s/ Edward K. Pritchard, III, Esq.
Edward K. Pritchard, III, Esq.
Federal ID No. 4790
Post Office Box 630 (29402)
8 Cumberland Street, South Carolina 29401
Phone: (843) 722-3300
Fax: (843) 722-3379
E-mail: epritchard@pritcharlawgroup.com

*Attorneys for Plaintiffs Charleston Advancement Academy High School, Nadine Deif, Kenneth Battle, Vivian Pettigrew, Dr. Traci Combs, Elizabeth Moffly, Latoya S. Gailliard, and Joel Collins*

March 8, 2023